**Affirmed and Opinion filed August 9, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00343-CR

---

**GARY CLIFTON HURD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1405783**

---

## O P I N I O N

A jury convicted appellant Gary Clifton Hurd of the felony offense of conducting a horse race without a racetrack license when appellant knew or reasonably should have known that another person was betting on the partial or final outcome of the race. *See* Tex. Rev. Civ. Stat. Ann. art. 179e, § 14.16 (Vernon Supp. 2015). Appellant contends that (1) he was outside of the class of individuals

that the statute was intended to prosecute; and (2) the evidence is legally insufficient to support the jury's verdict. We affirm.

## BACKGROUND

Authorities investigated an unlicensed horse racing track called El Herradero between November 2012 and October 2013. Undercover officers visited El Herradero on eight different occasions during the investigation. Although the racetrack did not have house wagering and had signs posted that gambling was not allowed, officers observed open and pervasive hand-to-hand wagering between spectators on the outcomes of the races.[1]

Undercover officers observed appellant working security for the racetrack on several occasions during the investigation. At the time, appellant was volunteering as an unpaid reserve deputy for the Fort Bend County Constable. A state trooper ran security operations for the racetrack and approached appellant and other reserve officers about working security on race days. Appellant and the other reserve officers wore their official uniforms, including their badges and guns, while working security.

Authorities shut down El Herradero in October 2013 and arrested the racetrack owner, the state trooper in charge of security for the racetrack, the state trooper's wife (who allegedly was impersonating a police officer and assisting with security at the racetrack), and a number of reserve officers who worked security for the racetrack, including appellant.

Appellant was charged with conducting a horse race without having a racetrack license from the Texas Racing Commission, when appellant knew or reasonably should have known that another person was betting on the final

---

[1] A racetrack is not required to be licensed by the Texas Racing Commission if wagering is not conducted on the outcome of the races. *See* Tex. Rev. Civ. Stat. Ann. art. 179e, § 6.01.

2

outcome of the race. A jury convicted appellant, and the trial court assessed punishment at two years' confinement and a fine of $1,000. The trial court suspended the sentence and placed appellant on community supervision for two years; the trial court required appellant to surrender his law enforcement license; and the trial court ordered appellant to serve 15 days in the Harris County Jail. Appellant timely appealed.

**STANDARDS OF REVIEW**

## I.     Statutory Construction

Statutory construction is a question of law. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). In construing a statute, we look first to the statute's literal text, and we read words and phrases in context and construe them according to rules of grammar and usage. *Id.* We must presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *Id.* Where the statute is clear and unambiguous, the legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *Uyamadu v. State*, 359 S.W.3d 753, 758 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

## II.     Legal Sufficiency

When reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In making this review, we consider all evidence

3

in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

We defer to the jury's resolution or reconciliation of conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Our duty as a reviewing court is to ensure that the evidence presented actually supports a conclusion that the appellant committed the crime that was charged. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

## ANALYSIS

### I. Law of Parties

Appellant was charged with the offense of "racing without a license." *See* Tex. Rev. Civ. Stat. Ann. art. 179e, § 14.16. Section 14.16 provides that a person commits the offense of racing without a license if the person (1) conducts a horse or greyhound race without a racetrack license; and (2) knows or reasonably should know that another person is betting on the final or partial outcome of the race. *Id.* § 14.16(a). A violation of section 14.16 is a third-degree felony. *Id.* § 14.16(b).

In addition to allowing appellant's conviction as a primary actor, the jury charge also included an instruction on the law of parties.[2] Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense,

---

[2] "Regardless of whether it is pled in the charging instrument, liability as a party is an available legal theory if it is supported by the evidence." *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013) (orig. proceeding).

4

the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2011). As applied in this case, the jury was charged that appellant could be found guilty if, with the intent to promote or assist the commission of the offense, appellant solicited, encouraged, directed, aided, or attempted to aid the racetrack owner or the state trooper in charge of security for the racetrack to commit the offense.

The jury found appellant guilty and was not required to specify whether it determined that appellant violated the statute as a primary actor or as a party. *See Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011) ("Where, as is the case here, the evidence is compelling that an accused is guilty of every constituent element of the alleged penal offense—*either* as a principal actor *or* under some theory of party liability—but there remains evidentiary play with respect to his precise role in that offense, we think it would be plainly absurd to require the jury to acquit the accused unless it can unanimously determine his status as a principal actor or a party and, if the latter, what his exact party accountability might be.").

Appellant contends in his first issue that he falls outside the class of individuals targeted by the statute. Appellant argues that section 14.16 "is intended to be applied to owners of racing facilities that conduct wagering on the outcomes of races they conduct without first obtaining a racetrack license from the Texas Racing Commission," and that the section "does not apply to Appellant who was acting within the scope of his job as a security officer." Appellant discusses the different types of permits required under the Texas Racing Act and contends that, although he may have been required to obtain an occupational license from the Texas Racing Commission, he was not required to obtain a racetrack license.

Appellant's argument lacks merit because the jury charge allowed conviction of appellant as a party to the offense. Whether the statute was intended

5

to prosecute persons other than the owner of the racetrack is not relevant to our analysis; the jury was required to find only that, acting with the intent to promote or assist the commission of the offense, appellant solicited, encouraged, directed, aided, or attempted to aid the racetrack owner or the peace officer in charge of security for the racetrack to commit the offense. Nothing in the language of section 14.16 of the Texas Racing Act or section 7.02(a) of the Texas Penal Code prohibits application of the law of parties to the offense of racing without a license. *See generally* Tex. Rev. Civ. Stat. Ann. art. 179e, § 14.16; Tex. Penal Code Ann. § 7.02(a)(2); *see also In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013) (orig. proceeding) ("Party liability is as much an element of an offense as the enumerated elements prescribed in a statute that defines a particular crime."). Accordingly, we overrule appellant's first issue.

## II.    Legal Sufficiency

Appellant contends in his second issue that legally insufficient evidence supports his conviction. Although appellant primarily argues that the evidence is insufficient to show he committed the offense as a primary actor, we liberally construe appellant's argument to encompass a challenge to the sufficiency of the evidence that he committed the offense in any capacity.

Interpretation of the racing-without-a-license statute appears to be an issue of first impression; this court has not found any other cases dealing with section 14.16 of the Texas Racing Act and the parties have not cited any. There is no precedent describing what conduct constitutes solicitation, encouragement, direction, aid, or attempted aid in the context of the offense of conducting a horse race without a racetrack license. Nevertheless, considering all of the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support a finding that appellant committed the offense of racing

6

without a license as a party to the offense. Accordingly, we need not address the sufficiency of the evidence to establish appellant's guilt as the primary actor. *See Hoang v. State*, 263 S.W.3d 18, 19 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

When a party is not the primary actor, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). Party participation may be shown by events occurring before, during, and after the commission of the offense, and may be demonstrated by actions showing an understanding and common design to do the prohibited act. *Salinas v. State*, 163 S.W.3d 734, 739-40 (Tex. Crim. App. 2005). Circumstantial evidence may be used to prove one is a party to an offense. *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).

Here, the evidence is sufficient to show both a violation of the Texas Racing Act by the racetrack owner and that appellant, with the intent to promote or assist in the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid the owner in committing the offense.

First, we consider the evidence establishing a violation of the Texas Racing Act.

Testimony at trial established that Reginaldo Mandujano owned El Herradero. The State put on uncontroverted evidence from various law enforcement officers that: El Herradero was not licensed by the Texas Racing Commission; El Herradero had horse races on Saturdays; Mandujano was observed at El Herradero on a race day; Mandujano paid El Herradero's employees; hand-to-hand betting among patrons of the racetrack was open and pervasive; the betting between patrons was "real obvious;" and "[i]f someone was there on multiple

7

days" it would "be reasonable to believe that they knew betting was going on." It is undisputed that Mandujano knew or reasonably should have known that others were betting on the final or partial outcomes of races. Accordingly, the evidence supports a finding that Mandujano committed the offense of conducting a horse race without a racetrack license when he knew or reasonably should have known that another person was betting on the final or partial outcome of the race. *See* Tex. Rev. Civ. Stat. Ann. art. 179e, § 14.16.

Second, we consider the evidence establishing that appellant, with the intent to promote or assist in the commission of the Texas Racing Act violation, solicited, encouraged, directed, aided, or attempted to aid Mandujano in his commission of the offense.

Evidence adduced at trial showed that appellant was working security on five of the eight occasions when undercover agents visited El Herradero. Appellant wore his full reserve deputy uniform, including his badge and his gun, on those occasions. Appellant's duties included checking individuals as they came into the property to ensure that no outside alcoholic beverages were brought in; directing people about the racetrack; and generally keeping the peace. Security officers at the racetrack received $25 per hour in cash for their work and were paid by Mandujano.

When asked how appellant helped in conducting the races, one officer testified that appellant and the other security officers provided a "general police command presence" that established a "secure atmosphere" and "gave a sense of safety on the property." Another officer testified that the uniformed security officers added legitimacy and validity to the racetrack. Moreover, a jury reasonably could have concluded that appellant's uniformed presence in a cash-filled environment facilitated hand-to-hand cash betting, thereby aiding in the

8

creation of an atmosphere for the underlying element of the offense (betting on the outcome of the races) to take place. These actions, taken together, support a finding that appellant aided or attempted to aid Mandujano in conducting a horse race without a racing license where others were betting on the outcome of the race.

The evidence described above is sufficient to establish that appellant aided or attempted to aid Mandujano in conducting a horse race; without more, however, this evidence does not establish that appellant did so with the intent to promote or assist in the commission of the Texas Racing Act violation. There is more here because evidence established that appellant was aware of and encouraged the illegal betting at the racetrack.

One undercover officer testified that he told appellant he "was going to go make some money, meaning that [he] was going to go bet," before walking away and engaging in a bet with another individual. Another undercover officer testified that he spoke with appellant about betting; told appellant that he "wasn't hardly winning anything" and that he had "just won a couple hundred dollars;" and stated that appellant told him he should have bet $500 on the previous race. The undercover officer testified that he told appellant he was "going to go back and try to bet some more and see if [he] could win some more money" and offered to make a bet for appellant, but appellant declined the offer. The officer testified that appellant did not attempt to dissuade or stop him or anyone else from betting. We conclude that a reasonable jury could have relied on this evidence to conclude that (1) appellant was aware of and encouraged hand-to-hand betting; and (2) appellant thereby acted with the intent to promote or assist in the commission of the Texas Racing Act violation.

Based on the foregoing, we conclude the evidence is legally sufficient to support the jury's verdict that appellant aided or attempted to aid Mandujano's

9

violation of the Texas Racing Act and did so with the intent to promote or assist the commission of the offense. The conviction here does not rest on proof of appellant's status within an enterprise that merely had criminal potential. Rather, appellant's conviction rests on evidence of his actions as a security officer coupled with evidence that he affirmatively encouraged hand-to-hand betting. *Cf. Beier*, 687 S.W.2d at 4 (rejecting notion that conviction could be based upon proof of appellant's status as the manager of an enterprise and showing that manager knew that the enterprise had criminal potential, because to do so would be to convict based upon the manager's status rather than his conduct). Accordingly, we overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.

/s/ William J. Boyce
   Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise.
Publish — Tex. R. App. P. 47.2(b).